**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————x
In re MANULIFE FINANCIAL CORP.     )     1:09-cv-06185-JFK
SECURITIES LITIGATION     )
     )     ECF Case
     )
     )
—————————————————————x


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT


DEBEVOISE & PLIMPTON LLP

Edwin G. Schallert
Gary W. Kubek
Stuart C. Naifeh
Peter J. Kim
919 Third Avenue
New York, NY  10022
(212) 909-6000 (phone)
(212) 909-6836 (fax)

Scott N. Auby
555 13th Street NW, Suite 1100E
Washington, DC 20004
(202) 383-8000 (phone)
(202) 383-8118 (fax)

*Attorneys for Defendants*

September 2, 2011

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................... 2

I.      Procedural History ................................................................................................... 2

II.     The Second Amended Complaint ............................................................................ 6

ARGUMENT ........................................................................................................................ 8

I.      The SAC Fails to State a Claim of Securities Fraud Under Section 10(b) or Rule 10b-5 Against Any Defendant. ......................................................................... 8

        A.      As the Court Already Has Stated, the Allegations Based on the *Financial Post* Article Do Not Suffice to Allege a Material Misstatement or Scienter. .......... 9

                1.      The *Financial Post* Article's Allegations Concerning a 2006 Manulife Risk Assessment Are Insufficient. .................................... 9

                2.      The *Financial Post* Article's Allegations Concerning the OSFI's Review and Concerns Do Not Support a Claim. ......................... 11

        B.      The SAC's New Allegations Do Not Sufficiently Plead Loss Causation. ............. 15

II.     The SAC's Section 20(a) Claims Against the Individual Defendants Must Be Dismissed. ................................................................................................... 18

CONCLUSION ................................................................................................................... 19

# TABLE OF AUTHORITIES

Page

CASES

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) ............................................................. 11

*Fait v. Regions Fin. Corp.*, No. 10-2311-cv, 2011 WL 3667784 (2d Cir. Aug. 23, 2011) ........... 12

*In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461 (S.D.N.Y. 2008).................................... 13

*In re Omnicom Group, Inc. Sec. Litig.*, 541 F. Supp. 2d 546 (S.D.N.Y. 2008)................15, 16, 18

*Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161(2d Cir. 2005) .................................................. 15

*Oughtred v. E\*Trade Fin. Corp.*, No. 08 Civ. 3295, 2011 WL 1210198 (S.D.N.Y. Mar. 31, 2011) ...............................................................................................................................10, 13

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801 (2d Cir. 1996) ....................................................................................................................... 8

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148 (2008).................................... 8

*Virginia Bankshares v. Sandberg*, 501 U.S. 1083 (1991) ............................................................. 12

STATUTES

Securities Exchange Act of 1934 § 10, 15 U.S.C. § 78j ...................................................2, 6, 8, 18

Securities Exchange Act of 1934 § 20, 15 U.S.C. § 78t ........................................................2, 6, 18

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4.............................................4, 10, 12

OTHER AUTHORITIES

Fed. R. Civ. P. 8 ............................................................................................................................... 5

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 ..................................................................................2, 6, 8

Defendants submit this Memorandum of Law in support of their motion to dismiss with prejudice all claims asserted in the Second Amended Class Action Complaint for Violation of the Securities Laws, dated July 22, 2011 (the "SAC").

## PRELIMINARY STATEMENT

On May 23, 2011, the Court issued its Opinion and Order ("Opinion") granting Defendants' motion to dismiss Plaintiffs' first Amended Class Action Complaint ("FAC").  (Dkt. No. 37.)  The Court identified serious pleading deficiencies in the FAC, and held that Plaintiffs had "allege[d] only 'fraud by hindsight,'" "take[n] statements out of context," "failed to show that [Manulife's] opinion statements were false or misleading," "failed adequately to plead scienter," and "failed to show loss causation."  (Opinion at 30, 31, 36, 37, 46.)  The Court granted Plaintiffs leave to attempt to correct these numerous deficiencies by filing another amended complaint.

In response, Plaintiffs have submitted the SAC, which does nothing to overcome the deficiencies identified by this Court.  The SAC does not allege a single additional fact that supports a federal securities law claim against any of the Defendants.  Instead, the SAC merely (i) adds allegations from a *Financial Post* article that the Court has already determined cannot support Plaintiffs' claims and (ii) attempts to recharacterize other allegations that the Court has already considered and rejected.  Indeed, the only meaningful change is that the SAC more egregiously mischaracterizes and takes out of context Defendants' disclosures throughout the putative class period.

The SAC does not state a federal securities law claim for the same reasons the Court found the FAC deficient: it "allege[s] only 'fraud by hindsight,'" "take[s] statements out of context," "fail[s] to show that [Manulife's] opinion statements were false or misleading," "fail[s]

adequately to plead scienter," and "fail[s] to show loss causation." (Opinion at 30, 31, 36, 37, 46.) Plaintiffs have now had two bites at the pleading apple, the second one with explicit guidance from the Court as to the deficiencies they needed to remedy. The SAC demonstrates that Plaintiffs cannot allege a claim that can survive a motion to dismiss. Plaintiffs' claims against Defendants therefore should be dismissed in full, and with prejudice.

## BACKGROUND

### I.     Procedural History

On July 9, 2009, this putative class action was filed against Dominic D'Alessandro, Peter Rubenovitch (together, the "Individual Defendants") and Manulife Financial Corporation ("Manulife" or the "Company") under the caption *Burzotta v. Manulife Financial Corporation*. On November 2, 2009, the case was consolidated with related actions under the caption *In re Manulife Financial Corp. Securities Litigation*. On December 29, 2009, Plaintiffs filed the FAC, asserting causes of action under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 against all Defendants, and under Section 20(a) of the Exchange Act, against the Individual Defendants. 15 U.S.C. § 78j(b) ("Section 10(b)"); 17 C.F.R. § 240.10b-5 ("Rule 10b-5"); 15 U.S.C. § 78t(a) ("Section 20(a)"). The FAC alleged that the decline in Manulife's stock price in 2008 and early 2009 – when financial markets were collapsing around the world – resulted not from that market collapse but from disclosures that Defendants previously had made fraudulent statements about the Company's equity-market risk controls and financial condition.

On April 29, 2010, Defendants moved to dismiss the FAC. Defendants' motion argued that they had fully disclosed the risks that Plaintiffs alleged had been misrepresented, Plaintiffs had failed adequately to allege that any Defendant had acted with scienter, and Plaintiffs had not

shown that their alleged losses were caused by any disclosure of a purported fraud rather than the global equity market collapse.

In opposing Defendants' motion, Plaintiffs offered new allegations based on statements contained in an article entitled "Inside the fortress: Drama behind Manulife's doors," that appeared in Canada's *Financial Post* on January 30, 2010.[1]  The *Financial Post* article, which was published after the FAC was filed, described internal communications among Manulife's top management from a period two years prior to the beginning of the putative class period concerning the Company's risk control strategy.  In addition, the article discussed an examination of Manulife's financial condition by its primary Canadian regulator, the Office of the Superintendent of Financial Institutions (the "OSFI").  Plaintiffs asserted that the contents of the *Financial Post* article supported their claims that Defendants' statements concerning Manulife's risk controls and financial condition were intentionally false.

On October 19, 2010, the Court heard oral argument on Defendants' motion, and in its Opinion dated May 23, 2011, the Court dismissed the FAC in its entirety.  The Court held that the FAC failed to allege adequately any of the three key elements of securities fraud—a material misrepresentation, scienter, or loss causation—the absence of any one of which required dismissal.

*First*, the Court found Plaintiffs' allegations insufficient to allege any material misstatement by any Defendant.  The Court held that Plaintiffs' allegations of misleading statements concerning Manulife's risk controls amounted to an impermissible claim of "fraud by hindsight." (Opinion at 30-31.)  The Court further found that Plaintiffs' allegation that Manulife

---

[1]    The article was attached as Exhibit A to the Declaration of Samuel Rudman in support of Plaintiffs' Opposition to Defendants' Motion to Dismiss Amended Complaint (Dkt. No. 28) ("Rudman Decl.").

concealed its exposure to equity markets was contradicted by documents cited in the FAC and

that Plaintiffs had ignored other contemporaneous statements by Defendants concerning

Manulife's potential exposure from Guaranteed Products and the limitations on its hedging

programs.[2]  (*Id.* at 31-32.)  Accordingly, the Court found that Plaintiffs had failed to explain

why the alleged risk-control statements were misleading when made, as required by Section

101(b) of the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. § 78u-4(b).

(*Id.* at 31-33.)

In addition, the Court held that Manulife's statements regarding the adequacy of its

capital position were not misleading when read in context, because Manulife disclosed the risks

of an equity market downturn to its investors and explained why it believed its capital was

adequate.  (*Id.* at 34-36.)  Likewise, the Court rejected Plaintiffs' allegations that Defendants had

falsely stated that Manulife did not intend to issue equity, holding that Defendants' statements

"were not . . . unequivocal assurances," but "merely indicated that . . . Defendants did not believe

that a dilutive equity offering would be the best option for raising capital at that point in time."

(*Id.* at 36.)  Manulife's later decision to issue equity when markets deteriorated further did not

suggest fraud, "particularly given the extreme volatility in equity markets at the time."  (*Id.*)

*Second*, the Court found the FAC insufficient to allege that any Defendant acted with

scienter.  The Court held that most of Plaintiffs' allegations failed to raise even an inference of

scienter, much less the strong inference required by the securities laws.  (*Id.* at 39-40.)  The

Court further held that an investigation by the Ontario Securities Commission ("OSC") "does not

itself constitute a strong inference of scienter and does not sufficiently strengthen the other

---

[2]    Unless otherwise noted, all capitalized terms in this Memorandum have the same meaning
       ascribed to them by the Court in its May 23, 2011 Opinion and Order dismissing Plaintiffs'
       Amended Class Action Complaint. (Dkt. No. 37.)

allegations." (*Id.* at 39.)  The Court also noted that, by the time of the Opinion, the OSC had closed its investigation with no action against Manulife or the Individual Defendants.  (*Id.* at 40.) In addition, the Court rejected Plaintiffs' claim that the proximity in time of Defendants' statements that Manulife did not intend to issue equity and the subsequent issuance of Manulife stock raised a strong inference of scienter, finding that this contention "takes no account of the massive economic and political changes taking place" during that period.  (*Id.*)

*Third*, the Court held that Plaintiffs had failed sufficiently to allege loss causation.  The Court first observed that because "no corrective disclosure is pleaded to explain the decline between April and early October" 2008, this decline could not have resulted from the alleged fraud.  (*Id.* at 41-42.)[3]  The Court then rejected Plaintiffs' allegation that "unspecified rumors about Manulife's need to raise additional capital . . . leaked to the market" on December 1, 2008 and caused the Company's stock price to decline as "not a 'well-pleaded' factual allegation" sufficient to satisfy Fed. R. Civ. P. 8(a).  (*Id.* at 42-43.)  The Court further held that Plaintiffs had failed to account for the rebound in Manulife's stock price after the first properly alleged corrective disclosure on December 2, 2008, rendering their allegation of loss causation in connection with that disclosure implausible.  (*Id.* at 43-44.)  Lastly, the Court held that three other alleged corrective disclosures in February and March 2009 were inadequately pled because Plaintiffs failed to show that they revealed any new material information.  (*Id.* at 45-46.)

---

[3]    The Opinion notes that "approximately one quarter" of the $32.21 Class Period decline in Manulife's stock price occurred between April and early October 2008 (Opinion at 42); in fact, the decline from $40.11 on April 3, 2008 to $23.34 on October 10, 2008 accounts for a little more than one *half* of the $32.21 decline in Manulife's share price over the entire putative Class Period.  By December 1, 2008, the day before the first alleged corrective disclosure, Manulife's stock had fallen to $16.39 per share, accounting for almost 75% of the total Class Period decline.

Based on these holdings, the Court dismissed the Section 10(b) and Rule 10b-5 claims against each Defendant, as well as the control person claims against the Individual Defendants under Section 20(a) for failure to plead an underlying violation of the federal securities laws by Manulife. Although the Court refused to consider allegations based on the *Financial Post* article cited in Plaintiffs' opposition brief because those allegations were not included in the FAC (*id.* at 24), the Court expressly stated that "the result of this motion would be no different if the Court did consider the allegations" based on that article. (*Id.* at 24 n.2.) The Court granted Plaintiffs leave to amend. (*Id.* at 47.)

## II.    The Second Amended Complaint

On July 22, 2011, Plaintiffs filed the SAC. Despite the Court's express statement that the information contained in the *Financial Post* article could not save Plaintiffs' claims from dismissal, the only new facts alleged in the SAC come from that article. (SAC ¶¶ 42-51.) Based on the article, Plaintiffs allege that, years before the beginning of the putative Class Period, Manulife's chief risk officer expressed concern about the "growing equity risk" posed by its Guaranteed Products. (*E.g.*, *id.* ¶ 42.) In its Opinion, the Court stated that this allegation did not suffice to plead either "that Manulife's public statements were materially false or made with scienter." (Opinion at 24 n.2.)

Also based on the article, the SAC alleges that sometime "[a]fter the stock markets began to decline rapidly in September 2008," the OSFI began a review of the Company's financial position out of concern for its Guaranteed Product exposure, and that "by October 2008," the OSFI was raising questions about Manulife's risk controls and insisting that the Company shore up its capital position "through a series of transactions." (SAC ¶¶ 44-45, 47-48, 50, 78, 82, 85, 91, 134, 136-37.) The SAC also alleges, based on the article, that the OSFI requested, at some unspecified time, that Manulife retain Deloitte & Touche to conduct an independent examination

of its risk-management processes for the Guaranteed Products.  (*Id.* ¶¶ 49, 78, 82, 85, 137.)  In its

Opinion, the Court declared that these same allegations from the *Financial Post* article "do not

contradict any public statements nor render any public statements of opinion attributable to

Manulife or the Individual Defendants actually false."  (Opinion at 24 n.2.)

      Without pleading any additional facts, the SAC also attempts to resurrect some of the

loss-causation allegations in the FAC that the Court previously found insufficient.  In particular,

the SAC asserts that because Fitch's press release announcing a February 27, 2009 ratings

downgrade of Manulife predicted further equity market declines, the downgrade somehow

"enhanced the market's understanding of Manulife's equity market exposure" – even though the

press release said nothing new about Manulife's exposure.  (SAC ¶¶ 112-13.)  The SAC also

tries to bolster its allegations concerning Mr. Rubenovitch's March 2, 2009 presentation by

offering Plaintiffs' characterizations of various data included in the presentation – data quoted in

the FAC and already rejected by the Court as corrective disclosures.  (*Id.* ¶¶ 115-16.)

      Lastly, despite the Court's criticism of the FAC for failing to place Defendants'

disclosures in the full context of all of their statements (Opinion at 31-33), the SAC actually

deletes a number of quotations from Manulife's public statements that were included in the FAC.

For example, the SAC omits many of the explanations and descriptions of the Company's risk

control policies and procedures that were contained in its 2007 annual report, as well as

disclosures concerning Manulife's exposure to market price risk in light of product guarantees,

all of which were quoted in the FAC.  (*Compare* FAC ¶¶ 43-51 *with* SAC ¶¶ 52-57.)  Likewise,

unlike the FAC, the SAC's quotations from Manulife's announcement of its fourth quarter 2008

financial results omit the Company's explanation that the "major reason" for the decline in actual

earnings relative to an earlier estimate was a drop in swap interest rates (which did not relate to

7

Plaintiffs' allegations), as well as the statement that Manulife's obligations on its Guaranteed

Products were not payable until a period ranging from seven to thirty years in the future.

(*Compare* FAC ¶ 97 *with* SAC ¶ 104.)

Notwithstanding Plaintiffs' deletion of disclosures that undermine the SAC's allegations,

the Court can and should consider, as it did in the prior motion (Opinion at 2-3), the full contents

of the documents partially quoted in the SAC, not just those portions that Plaintiffs have chosen

to include. *See, e.g., San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris

Cos.*, 75 F.3d 801, 808-09 (2d Cir. 1996).

## ARGUMENT

**I.      The SAC Fails to State a Claim of Securities Fraud Under Section 10(b) or Rule
         10b-5 Against Any Defendant.**

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must adequately allege,

among other things, that the defendant made a material misrepresentation or omission, that the

defendant acted with scienter and that the material misrepresentation caused investors loss. *See

Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008); 15 U.S.C.

§ 78j(b).  In its Opinion, the Court held that the FAC failed to plead sufficiently any of these

three required elements.  For the most part, as explained above, the SAC simply repeats the

allegations of the FAC.  Defendants will not repeat the many reasons why, as the Court has

already held, the allegations Plaintiffs made in the FAC, and have reiterated in the SAC, fail to

state a claim.  Those reasons are explained in the Opinion and Defendants' memoranda in

support of their Motion to Dismiss the FAC, which are part of the record in this action.  (*See* Dkt.

Nos. 27 & 31.)

This Memorandum addresses the handful of new allegations that Plaintiffs have added to

the SAC, which fail to cure the FAC's pleading deficiencies.  The Court has already found that

the allegations based on the *Financial Post* article – the only new factual allegations in the SAC – do not suffice to allege a material misstatement or any Defendant's scienter.  (Opinion at 24 n.2.)  In addition, Plaintiffs cannot resurrect the FAC's rejected loss-causation allegations merely by cloaking them with conclusory statements and recharacterizing disclosures the Court has already considered.

Thus, like the FAC, the SAC fails adequately to plead a material misstatement, scienter or loss causation, and should be dismissed.

A.   **As the Court Already Has Stated, the Allegations Based on the *Financial Post* Article Do Not Allege a Material Misstatement or Scienter.**

In its Opinion dismissing the FAC, the Court held that Plaintiffs could not rely on allegations based on the *Financial Post* article, because those allegations were not included in the FAC but instead were first made in Plaintiffs' opposition brief.  (Opinion at 24.)  The Court made clear, however, that "the result of this motion would be no different if the Court did consider" those allegations.  (*Id.* at 24 n.2.)  Dismissal of the FAC still would have been required because the allegations based on the article were insufficient to plead a material misstatement or raise a strong inference of scienter.  (*Id.*)  For the reasons set forth below, this conclusion was correct.  Thus, Plaintiffs' claims cannot be saved by amending the FAC to add allegations based on the *Financial Post* article.

1.   **The *Financial Post* Article's Allegations Concerning a 2006 Manulife Risk Assessment Are Insufficient.**

Plaintiffs point to the *Financial Post's* report of an April 2006 presentation, in which Manulife's risk officer allegedly said that the Company's balance sheet "could not absorb the growing equity risk" posed by the Guaranteed Products and suggested that the Company engage in greater hedging of those products.  (SAC ¶¶ 42, 67, 134.)  Plaintiffs contend that this allegation concerning a statement in April 2006 is inconsistent with Mr. D'Alessandro's

9

statement in May 2008 – more than two years later – that the Company could "expect to do well no matter what and how turbulent the financial markets get" because of its diverse asset portfolio, strong funding base and liquidity position. (*Id.* ¶ 67.) In its Opinion, the Court explicitly addressed this allegation and concluded that it did not "support the Lead Plaintiffs' allegations that Manulife's public statements were materially false or made with scienter." (Opinion at 24 n.2.)

Plaintiffs' allegations concerning the April 2006 presentation do not satisfy their burden under Section 101(b)(1) of the PSLRA to explain why the May 2008 statement was materially false when made. *See* 15 U.S.C. § 78u-4(b)(1). Plaintiffs offer no facts to explain how an alleged warning in 2006 concerning Manulife's Guaranteed Products rendered false a statement made two years later about the diversity of Manulife's entire asset portfolio and liquidity position, not just its Guaranteed Products. (*See* SAC ¶¶ 64-67.) Moreover, as the Court has already observed, "[w]hen considered as a whole, Manulife did 'weather the storm,' despite substantial losses resulting from capital charges related to its Guaranteed Product obligations." (Opinion at 34.)

Further, the alleged April 2006 statement does not create a strong inference that Mr. D'Alessandro knew or recklessly disregarded that his May 2008 statement was false. A vague warning in 2006 about a growing equity risk does not support an inference that, when speaking two years later, Mr. D'Alessandro knew, or was reckless in failing to predict, the extreme market turbulence and resulting losses that Manulife ultimately would experience. As the Court has already ruled, Defendants "clearly disclosed" the risk posed to Manulife by an equity market decline (Opinion at 35); Mr. D'Alessandro did not commit securities fraud by failing to foresee and disclose the full potential impact of the worst financial crisis since the Great Depression.

10

*See, e.g., Oughtred v. E\*Trade Fin. Corp.*, No. 08 Civ. 3295, 2011 WL 1210198, at \*11
(S.D.N.Y. Mar. 31, 2011) ("E\*Trade's purported knowledge that one or more ARS auctions had
in fact failed does not create a strong inference that E\*Trade knew or was reckless with regard to
the fact that the market for ARS would totally collapse."); *see also Acito v. IMCERA Group,
Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) ("defendants' lack of clairvoyance simply does not constitute
securities fraud").

### 2.     The *Financial Post* Article's Allegations Concerning the OSFI's Review and Concerns Do Not Support a Claim.

The SAC also includes allegations from the *Financial Post* article concerning an OSFI
review and discussions with Manulife, and alleged OSFI expressions of concern, regarding
Manulife's capital position, starting at an unspecified time "[a]fter . . . September 2008." (SAC
¶¶ 42-45, 47-50.) Plaintiffs claim that, in light of this activity by the OSFI, Defendants'
expressions of belief in October and November 2008 that Manulife's Guaranteed Product
reserves and capital were adequate were intentionally false. (*Id.* ¶¶ 78-79, 82-83, 85-86, 91-92,
134-35.) In its Opinion, the Court also addressed these allegations, stating that the OSFI's
request that Manulife raise additional capital through "a series of transactions" did not "support
the Lead Plaintiffs' allegations that Manulife's public statements were materially false or made
with scienter," and the OSFI's expressions of concern and request for an independent Deloitte &
Touche examination "indicate that the OSFI was performing its duty as an insurance regulator,
but do not contradict any public statements nor render any public statements of opinion
attributable to Manulife or the Individual Defendants actionably false." (Opinion at 24 n.2.)
Again, the Court's prior view of these allegations was correct.

*First*, the OSFI's alleged review, expressions of concern and related actions did not make
Defendants' expressions of opinion that Manulife's capital was adequate materially misleading.

As the Court held in dismissing the FAC's allegations concerning Manulife's capital-adequacy statements:

> Manulife clearly disclosed the risks of an equity market downturn to its investors.  Lead Plaintiffs[] fail to exclude the most reasonable interpretation of Manulife's capital adequacy statements: that Manulife believed its regulatory capital to be adequate given the range of probable equity market declines and the long duration of its Guaranteed Product obligations.  Given that Manulife explained its reasoning along with its opinions about capital adequacy, Plaintiffs have failed to show that these opinion statements were false or misleading when read in context.  (Opinion at 36.)

Allegations that the OSFI was carrying out its regulatory duties by reviewing Manulife's capital position and expressing concerns at about the same time as Defendants' capital-adequacy statements do nothing to alter the Court's analysis.  As the Second Circuit recently reiterated, statements of opinion are not actionable (even under the Securities Act of 1933, which does not require scienter) unless they were "both false and not honestly believed when they were made." *Fait v. Regions Fin. Corp.*, No. 10-2311-cv, 2011 WL 3667784, at *7 (2d Cir. Aug. 23, 2011); *see also Virginia Bankshares v. Sandberg*, 501 U.S. 1083, 1095-96 (1991).

Plaintiffs' allegation that the OSFI "insist[ed]," by some unspecified time in October 2008, that Manulife undertake "a series of transactions" to shore up its capital (SAC ¶ 45) does not satisfy the PSLRA's requirement that Plaintiffs allege why Defendants' statements were materially misleading.  *See* 15 U.S.C. § 78u-4(b)(1).  Plaintiffs allege vaguely that the OSFI's request was made "[b]y . . . October 2008" (SAC ¶¶ 45-46, 78-79, 82-83, 85-86), but the article does not state when the OSFI allegedly communicated this position to the Company and does not support any inference that the OSFI made this request *before*, not after, Defendants' October 13 and 14 statements regarding Manulife's capital adequacy.  Moreover, the article attributes this statement to an unidentified "source familiar with the events."  (Rudman Decl. (Dkt. No. 28), Ex. A at 4.)  This double hearsay displays none of the indicia of reliability required for reliance

on a confidential source even when plaintiffs' counsel is attesting to the anonymous statement, much less when counsel is relying on a news article that in turn quotes an anonymous source. *See, e.g., In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008) (discounting confidential informant's statement that defendants attended meetings where questions of sufficiency of internal controls were discussed as "so vague as to be meaningless, because it contains no time frame within which the meetings occurred . . . and no information regarding how extensively or in what manner the reports were discussed").

Nor does the OSFI's alleged October 2008 request render materially misleading Defendant D'Alessandro's statement in a November 6, 2008 press release that, in light of a new $3 billion loan, Manulife's capital position was a "very comfortable one." (SAC ¶¶ 89-92.) Plaintiffs allege no facts that could support an inference that this statement of opinion was false and/or not honestly believed by Mr. D'Alessandro. As Defendants also disclosed on November 6, 2008, (1) as a result of discussions with the OSFI, the regulator had eased Manulife's MCCSR requirements going forward; and (2) with the new loan, Manulife's MCCSR under the OSFI's new requirements was well above the Company's target range. (SAC ¶¶ 93-94; *see also* Opinion at 16-17.)

*Second*, the allegations concerning the OSFI do not give rise to the required strong inference of any Defendant's scienter. Even a government investigation, much less an expression of concerns such as the alleged statements by the OSFI during a regulatory examination, standing alone, cannot create a strong inference of scienter. *See Oughtred*, 2011 WL 1210198 at *11 n.5 ("Simply put, the mere existence of allegations, without any determination of liability, does not support an inference of scienter").

In addition, as explained above, Plaintiffs allege no facts that would place the OSFI's request before the Defendants' October 13 and 14, 2008 statements, and by the time of Defendants' November 6, 2008 statements, the Company had shored up its capital through a $3 billion loan and the OSFI had relaxed its MCCSR requirements.  Moreover, the OFSI's alleged insistence on "a series of transactions" does not support a strong inference that Defendants knew that Manulife inevitably would have to issue equity.  According to the *Financial Post* article, issuance of common stock was only one of several possible options mentioned by the OFSI "to flush up Manulife's capital," and Mr. D'Alessandro initially "refused to consider diluting Manulife's shareholders with a share offering, insisting it was a last-resort option."  (Rudman Decl. (Dkt. No. 28), Ex. A at 4.)  These allegations do not contradict, but rather are entirely consistent with, Defendants' October and early November statements that Manulife did not intend to issue equity.[4]

Lastly, as the Court has already observed, the OSFI's request that Manulife retain Deloitte & Touche to review the Company's risk management procedures relating to Guaranteed Products does not contradict any of Defendants' public statements but merely indicates that "the OSFI was performing its duty as an insurance regulator."  (Opinion at 24 n.2.)

In short, the allegations based on the *Financial Post* article – the only ostensible new factual support in the SAC for Plaintiffs' claims – have already been reviewed and correctly rejected by the Court as insufficient to allege either a material misstatement or scienter. Accordingly, the SAC, like the FAC, should be dismissed.

---

[4]    Plaintiffs continue to mischaracterize Defendants' statements as having "misleadingly reassured investors that the Company would not need to issue equity."  (SAC ¶ 77)  The Court has already held that these allegations "misconstrue" Defendants' statements, which "merely indicated that Manulife and the Individual Defendants did not believe that a dilutive equity offering would be the best option for raising capital at that point in time."  (Opinion at 36)

**B.      The SAC's New Allegations Do Not Sufficiently Plead Loss Causation.**

In its Opinion, the Court held that the FAC also failed adequately to plead loss causation – *i.e.*, that Defendants' alleged misstatements "concealed something from the market that, when disclosed, negatively affected the value of" Manulife's stock.  *See Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 173 (2d Cir. 2005).  The SAC makes no attempt to correct this pleading deficiency, except for some inconsequential additions to Plaintiffs' allegations concerning two of Manulife's claimed corrective disclosures: the February 27, 2009 Fitch ratings downgrade and a March 2, 2009 presentation given by Mr. Rubenovitch.  The SAC's new allegations about these supposed corrective disclosures do not show that either disclosure "reveal[ed] the falsity of an alleged misstatement."  *In re Omnicom Group, Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 552 (S.D.N.Y. 2008). [5]

Plaintiffs acknowledge that the February 27, 2009 Fitch ratings downgrade merely "reflect[ed] the adverse information that the market was [already] absorbing," and thus did not reveal anything new about the purported falsity of Defendants' prior statements.  (SAC ¶ 112.) Instead, Plaintiffs characterize the announcement of the downgrade as somehow "enhancing the market's understanding of Manulife's equity market exposure" (SAC ¶ 113), because of Fitch's prognostication "that near-term conditions in the financial markets [would] likely continue for an extended period" and could result in heightened earnings volatility and a need for additional capital.  (SAC ¶ 112.)  However, as the Court has already found, "Manulife clearly disclosed the risks of an equity market downturn to its investors" (Opinion at 35), and investors certainly understood in late February 2009 that a continued market decline would affect Manulife's

---

[5]      The SAC, like the FAC, does not even attempt to allege loss causation with respect to the decline in Manulife's stock price from $40.11 on April 3, 2008 to $16.39 on December 1, 2008, the day before the first alleged corrective disclosure, which represented almost 75% of the total Class Period decline.

earnings and capital.  Thus, even if Fitch's prediction had been correct,[6] the SAC, like the FAC "does not allege that any new material information was revealed by the downgrade."  (*See* Opinion at 45.)  As the court held in *In re Omnicom Group, Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 552 (S.D.N.Y. 2008), "[a] recharacterization of previously disclosed facts cannot qualify as a corrective disclosure."

Likewise, Plaintiffs plead no new facts concerning the March 2, 2009 presentation given by Mr. Rubenovitch.  The SAC merely extracts slides from that presentation, which already were included in the FAC and rejected as corrective by the Court, and attempts to characterize those slides as revealing previously undisclosed material information.  They did not.

Plaintiffs cite to a slide entitled "Equity Market Impact on Earnings" (which was included in the FAC) to argue that the March 2 presentation "revealed" that Manulife's Guaranteed Products had reduced its earnings in 2008 by "over $3.7 billion."  (SAC ¶ 115.) Plaintiffs are wrong.  As the presentation itself makes clear, that amount was the total reduction in earnings resulting from the equity markets' effects on the Company's business as a whole, with $2.824 billion of that total coming from Guaranteed Products (Segregated Fund Guarantees).  (*Id.*; *see also* Opinion at 19 (recognizing that "the bulk," not all, of the $3.747 billion reduction was attributable to the Guaranteed Products).)  In any event, Manulife already had disclosed on February 12, 2009 – several weeks before the March 2 presentation – that (1) its net income in 2008 had declined by over $3.7 billion to $517 million, as against $4.302 billion in 2007, (2) its year-over-year results had been "negatively impacted by the downturn in global

---

[6]     The equity markets in fact reached their low point within the following ten days.

equity markets"; [7] and (3) in the fourth quarter of 2008 alone, Manulife had incurred losses of $2.407 billion for segregated fund guarantees and other equity related losses of $513 million. (Exhibit 11 to Declaration of Scott N. Auby in Support of Defendants' Motion to Dismiss Amended Class Action Complaint, February 12, 2010, Dkt. No. 29, at 1.) Since Manulife had previously announced that equity market declines reduced earnings by $265 million, $250 million and $574 million, respectively, in the first three quarters of 2008, the March 2 presentation did not disclose any new material information to investors concerning these losses. [8]

Plaintiffs also cite figures from a slide entitled "Segregated Fund Guarantees Reserves & Capital" (which also was included in the FAC) to argue that the March 2 presentation "revealed that the value of the funds associated with Manulife's [Guaranteed Products] totaled $74 billion, and the Company's guaranteed payments exceeded that amount by nearly $27 billion, meaning that Manulife had made payment guarantees totaling $101 billion." (SAC ¶ 116.) But a nearly identical slide, containing the same information, was presented in the February 12, 2009 call with analysts and investors (referenced in the SAC at ¶ 106) and was posted on Manulife's web site. (See Exhibit 1 to Declaration of Stuart C. Naifeh, dated September 2, 2011, submitted in support of this motion, at 15.) Thus, again, the March 2 presentation disclosed no new material information.

---

[7]   Plaintiffs have deleted these first two public disclosures from their quotations of the February 12, 2009 earnings announcement in the SAC, but the Court may still consider them. (*Compare* SAC ¶ 104 *with* FAC ¶ 97.)

[8]   The same is true with respect to the slide entitled "Earnings Analysis" (also included in the FAC), which showed that, excluding the earnings reductions from the Company's equity market exposure, Manulife's actual 2008 earnings ($517 million) would have been $4.264 million, in line with the Company's 2007 earnings ($4.302 billion). (SAC ¶ 115.) This is simply the arithmetical consequence of adding back the $3.747 billion in total losses from equity markets.

Plaintiffs' assertion, citing the same slide, that the March 2 presentation revealed that the Company's expected profit from Guaranteed Products was "only" $135 million is wrong because that information also had already been disclosed in the slide used during the February 12, 2009 call, referenced above.  Moreover, the SAC does not allege that Defendants ever made misleading statements about Manulife's expected profits from Guaranteed Products.  (SAC ¶ 116.)  Thus, this information could not have been a corrective disclosure.  *In re Omnicom*, 541 F. Supp. 2d at 552.  At most, this allegation implies that Manulife's expected profit from the Guaranteed Products was not worth the risk, but that does not support a securities fraud claim.

Thus, the SAC, like the FAC, does not adequately allege that the Fitch downgrade or the Rubenovitch presentation contained any corrective disclosures that might satisfy the requirement to plead loss causation.  For this independent reason, the SAC must be dismissed.

## II.    The SAC's  Section 20(a) Claims Against the Individual Defendants Must Be Dismissed.

The Court dismissed the FAC's Section 20(a) claims against the Individual Defendants because the FAC failed to state a valid Section 10(b) claim against Manulife.  (Opinion at 46.)  Because the SAC still fails to state a Section 10(b) claim against Manulife, the Section 20(a) claims against the Individual Defendants must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court to dismiss the SAC in its entirety, and with prejudice.

Dated:  September 2, 2011

DEBEVOISE & PLIMPTON LLP

By:  /s/ Gary W. Kubek
Edwin G. Schallert
Gary W. Kubek
Stuart C. Naifeh
Peter J. Kim
919 Third Avenue
New York, NY 10022
(212) 909-6000 (phone)
(212) 909-6836 (fax)
egschall@debevoise.com
gwkubek@debevoise.com
snaifeh@debevoise.com
pjkim@debevoise.com

Scott N. Auby
555 13th Street NW, Suite 1100E
Washington, DC 20004
(202) 383-8000 (phone)
(202) 383-8118 (fax)
snauby@debevoise.com

*Attorneys for Defendants*