UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

────────────────────────────────x
In re MANULIFE FINANCIAL CORP.         )     1:09-cv-06185-JFK
SECURITIES LITIGATION                  )
                                       )     ECF Case
                                       )
                                       )
────────────────────────────────x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

DEBEVOISE & PLIMPTON LLP

Edwin G. Schallert
Gary W. Kubek
Stuart C. Naifeh
Peter J. Kim
919 Third Avenue
New York, NY  10022
(212) 909-6000 (phone)
(212) 909-6836 (fax)

Scott N. Auby
555 13th Street NW, Suite 1100E
Washington, DC 20004
(202) 383-8000 (phone)
(202) 383-8118 (fax)

*Attorneys for Defendants*

November 16, 2011

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................1

I.    The SAC Does Not Cure Plaintiffs' Failure to Allege a Material Misstatement or Scienter. ...............................................................................................................................1

    A.    The SAC Alleges No New Material Facts. ..................................................................1

    B.    The SAC Alleges No Basis to Infer Scienter. .............................................................5

II.    The SAC Fails Plausibly to Allege Loss Causation................................................................6

CONCLUSION.................................................................................................................................10

**TABLE OF AUTHORITIES**

**CASES**

*In re Acterna Corp. Securities Litigation*, 378 F. Supp. 2d 561 (D. Md. 2005) ............................ 7

*In re Dynex Capital, Inc. Securities Litigation*, No. 05 Civ. 1897 (HB), 2006 WL 314524 (S.D.N.Y. Feb. 10, 2006) ................................................................................................. 8

*In re Vivendi Universal, S.A., Securities Litigation*, 605 F. Supp. 2d 586 (S.D.N.Y. 2009) ........... 8

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005) ..................................................... 6, 7

*Yurman Design Inc. v. Chaindom Enterprises, Inc.*, No. 99 Civ. 9307, 2000 WL 217480 (S.D.N.Y. Feb. 22, 2000) ............................................................................................. 9

**OTHER AUTHORITIES**

Local Civil Rule 6.3 .......................................................................................................... 9

Defendants submit this Reply Memorandum of Law in further support of their motion to dismiss with prejudice all claims asserted in the Second Amended Class Action Complaint for Violation of the Securities Laws (the "SAC").

## PRELIMINARY STATEMENT

Defendants demonstrated in their Memorandum of Law in Support of Defendants' Motion to Dismiss Second Amended Complaint (the "Opening Memorandum" or "Def. Mem.") that the SAC failed to overcome the deficiencies that caused this Court to dismiss the first Amended Class Action Complaint ("FAC").  Although Plaintiffs assert in their Memorandum of Law in Opposition to Defendants' Motion (the "Opposition" or "Pl. Mem.") that the SAC "addresses each of the Court's concerns and . . . adequately states a claim for securities fraud," Pl. Mem. at 1, their Opposition confirms that they have not addressed *any* of the concerns identified in the Court's prior Opinion and Order (the "Opinion").  The SAC, like the FAC, "fail[s] to show that [Manulife's] opinion statements were false or misleading," "fail[s] adequately to plead scienter," and "fail[s] to show loss causation."  Opinion at 36, 37, 46. Because Plaintiffs have failed to remedy the deficiencies expressly identified by the Court, the SAC should be dismissed, this time with prejudice and without leave to amend.

## ARGUMENT

**I. The SAC Does Not Cure Plaintiffs' Failure to Allege a Material Misstatement or Scienter.**

    **A.    The SAC Alleges No New Material Facts.**

The only "new" alleged facts included in the SAC are the same "old" facts contained in the *Financial Post* article, which Plaintiffs improperly introduced in their opposition to the motion to dismiss the FAC ("Pl. First Opp."). Plaintiffs try in vain to overcome this Court's

conclusion in the Opinion that "the result of this motion would be no different if the Court did consider the allegations" first raised in Plaintiffs' opposition brief, Opinion at 24 n.2, by asserting that "the SAC now includes allegations beyond the scope of what was previously included in Plaintiffs' opposition brief." Pl. Mem. at 1. But the SAC includes only two inconsequential allegations that were not directly referenced in Plaintiffs' opposition to the prior motion and rejected in the Opinion.[1]

First, the SAC notes the *Financial Post*'s statement that it reviewed unspecified "[i]nternal company documents," which allegedly showed that Manulife had "unusually high exposure to stock markets" and had "engage[d] in a small amount of hedging" in 2006. SAC ¶ 42. But the FAC already alleged that Manulife had "massive and unmitigated equity market exposure," FAC ¶ 5, and Plaintiffs' opposition to the first motion to dismiss quoted the *Financial Post's* report that an internal presentation warned in 2006 that the Company's balance sheet "could not absorb the growing equity risk." Pl. First Opp. at 10, 27. The reference to the unspecified internal documents adds nothing of substance to those prior allegations, and the fact that Manulife engaged in some hedging in 2006 certainly does not bolster Plaintiffs' claims that Manulife failed to disclose that the Guaranteed Products exposure was unhedged.

Second, the SAC notes that the *Financial Post* quoted a money manager as saying, apparently at or near the time the article was published in January 2010, long after the alleged Class Period ended, "There's a real credibility issue here . . . with past management and the

---

[1] Because the *Financial Post* article was attached as Exhibit A to the Declaration of Samuel H. Rudman filed in support of Plaintiffs Opposition to Defendants' Motion to Dismiss the Amended Class Action Complaint, all the statements in the article were before the Court, albeit improperly.

2

board itself." SAC ¶ 51.  However, a shareholder's post-Class Period opinion that the Company faces a credibility issue adds nothing to a securities fraud claim.

The remainder of the "New Allegations in the SAC" section (Pl. Mem. at 3-6) merely repeats either (i) assertions based on the *Financial Post* article that were raised in Plaintiffs' opposition to the first motion to dismiss, which the Court concluded would not have changed the result of that motion (Opinion at 24 n.2), or (ii) allegations included in the FAC (such as the statements by Defendants quoted at Pl. Mem at 5 and 6).  All of the purported facts asserted in the section of Plaintiffs' brief entitled "The Truth Gradually Emerges" were alleged in the FAC.[2]

Similarly, although the "Argument" section of the Opposition purports to rely on "additional factual allegations" in the SAC, Pl. Mem. at 8, it in fact simply repeats and rearranges Plaintiffs' arguments in opposition to the original motion.  For example, Plaintiffs refer to "new allegations of the SAC" that purportedly support a finding that Defendants' statements were materially misleading, Pl. Mem. at 9 n.5, but the argument in the next sentence, that "Defendants had decided **not** to actively manage Manulife's growing equity market exposure," *id.* (emphasis in original), appears verbatim (including the boldface type) in Plaintiffs' opposition to the first motion.  *See* Pl. First Opp. at 18.[3]  Likewise, Plaintiffs' oft-

---

[2]   The limited scope of the revisions in the SAC compared to the FAC can be seen in the blacklined copy of the SAC that is included as Exhibit A to the Declaration of Stuart C. Naifeh ("Naifeh Decl.").  Other than the addition of the allegations based on the *Financial Post* article, SAC ¶¶ 42-51, discussed above and in Defendants' Opening Memorandum, as well as in the Opinion, the revisions consist almost entirely of immaterial edits, renumbering of paragraphs and, in some instances, deletions of quotations from Defendants' disclosures.

[3]   The FAC repeatedly alleged that "Manulife had decided to 'self-insure' its variable annuity and segregated fund products," "Manulife's risk management policies, practices and controls were not prudent," and Manulife had decided "to retain the risk associated with" the Guaranteed Products "by leaving the investment portfolios that funded those products' guarantees unhedged."  *See e.g.*, FAC ¶¶ 45, 49, 52, 56, 59.

3

repeated refrain that, in early 2008, Manulife's board members "were urging D'Alessandro to curtail the sale of Manulife's Guaranteed Products and further hedge the Company's existing equity market exposure," Pl. Mem. at 9 (citing SAC ¶ 43); *see also id.* at 1, 3-4, 17, is the same argument that Plaintiffs made in opposing the first motion.  *See* Pl. First Opp. at 10.

Plaintiffs' assertion that other deficiencies in its allegations about Manulife's hedging program have "been remedied by the allegations of the SAC" is equally baseless.  Pl. Mem. at 10.  Each of the allegations in the SAC that is quoted in support of that assertion was included in the FAC, only in differently numbered paragraphs.  *See* Naifeh Decl. Ex. A (comparing SAC ¶¶ 53, 55, 69 with FAC ¶¶ 48, 51, 65).  Moreover, Plaintiffs' argument that Manulife did not disclose that its limited hedging "would do very little to reduce its equity market exposure" because the hedging "was limited to **newly-issued** guarantees – which were less risky," Pl. Mem. at 10 (emphasis in original), simply rephrases the FAC's allegation that "Defendants failed to disclose that any hedging that Manulife was undertaking was limited to **new** variable annuity and segregated fund policies, which had a much lower risk profile and were less costly to hedge."  FAC ¶ 66 (emphasis in original).

There also is no merit to Plaintiffs' argument that the SAC has addressed the Court's conclusion that Defendants' statements about Manulife's capital adequacy and equity market exposure were not materially misleading.  Pl. Mem. at 11-16.  Although Plaintiffs contend that "the SAC addresses this concern and makes clear that these reassurances . . . were a direct response to investors' concerns," *id.* at 12, each of the cited paragraphs, SAC ¶¶ 64, 71, 77, 80-81, was included, with no or immaterial differences, in the FAC.  *See* Naifeh Decl. Ex. A. The same is true of the remainder of this section of Plaintiffs' Opposition, which cites no new allegations of fact but simply tries to reargue points that were rejected in the Court's Opinion.

The only new allegation in the SAC relating to this issue is not an allegation of fact but the argument that Manulife's statement that "[w]e stress test our regulatory capital adequacy . . . under a number of significantly adverse but 'plausible' scenarios" was "materially false and misleading." SAC ¶¶ 57-58. But the very next sentence of the SAC concedes that this statement was true, acknowledging that Manulife "*did* 'stress test [its] regulatory capital adequacy' under the 'plausible scenario[]' of equity market declines greater than 10%." *Id*. at ¶ 58 (emphasis added). Plaintiffs' actual complaint is apparently that Manulife did not "disclose the results of those tests to investors," *id*., but Plaintiffs offer no basis for requiring Manulife to disclose every detail of its internal risk control process and tests to investors.

In sum, Plaintiffs offer no new facts to rebut this Court's explicit conclusion that "Manulife clearly disclosed the risks of an equity market downturn to its investors." Opinion at 35. The SAC therefore fails to support Plaintiffs' contention that Defendants violated any "duty to fully and accurately inform investors." Pl. Mem. at 2.

### B. The SAC Alleges No Basis to Infer Scienter.

Although Plaintiffs assert that the "new facts in the SAC support a strong inference" of scienter, Pl. Mem. at 17, the only "new facts" relied on are the allegations based on the *Financial Post* article, which the Court already concluded do not support a claim that Defendants' statements "were materially false or made with scienter." Opinion at 24, n.2. There is no basis for Plaintiffs' assertion that "the Court did not consider those allegations in context with Plaintiffs' other scienter allegations" or that "the SAC contains additional allegations," which it does not. Pl. Mem. at 17 n.8. Instead, Plaintiffs offer only an extended rehash of their

previously rejected arguments.  Accordingly, the SAC contains nothing to change this Court's previous conclusion that Plaintiffs have failed adequately to allege scienter.[4]

**II.     The SAC Fails Plausibly to Allege Loss Causation.**

In its Order, the Court held the FAC's loss-causation allegations insufficient to state a claim against Defendants.  Opinion at 40-46.  The SAC alleges no new facts that support a plausible inference of loss causation.  *See* Def. Mem. at 15-18.  Unable to allege such facts, Plaintiffs create a straw man in their Opposition, claiming that the Court incorrectly "faulted the FAC for not apportioning the declines in Manulife's stock price" between the alleged scheme and other salient factors.  Pl. Mem. at 21-22.

The Court, however, did no such thing.  Rather, the Court correctly noted that a plaintiff must specifically allege either: "(1) 'facts sufficient to support an inference that it was defendants' fraud – rather than other salient factors – that proximately caused plaintiff's loss;' or (2) 'facts sufficient to apportion the losses' between the misrepresentation and other salient factors."  Opinion at 41, quoting *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005).  Because Plaintiffs made no effort to satisfy the second alternative by apportioning Manulife's price declines between the alleged fraud and other salient factors, Plaintiffs were required to satisfy the first prong of the *Lentell* test by alleging facts sufficient to support an inference that Defendants' alleged fraud proximately caused Plaintiffs' loss.  After carefully reviewing the FAC's allegations, the Court correctly concluded that Plaintiffs had not done so,

---

[4]  Plaintiffs inexplicably assert that "Defendants do not challenge the SAC's allegations that their statements about Manulife's risk management and hedging were made with scienter." Pl .Mem. at 18 n.9.  Defendants' Opening Memorandum clearly states that "like the FAC, the SAC fails adequately to plead . . . scienter." Def. Mem. at 9; *see also id.* at 1-2, 8, 10,13, 14.

6

Opinion at 41-44, and with respect to the alleged disclosures on February 12, 2009, February 27, 2009 and March 2, 2009, had failed even to identify a corrective disclosure. *Id.* at 44-45. The SAC does not remedy those failures.

The Alleged December 2, 2008 Corrective Disclosure. The Court correctly held that Lead Plaintiffs' failure "to address or explain" the December 5, 2008 rebound in Manulife's stock price "render[ed] their loss causation allegations" with respect to Manulife's December 2, 2008 announcement "implausible in this case." Opinion at 44; *see also In re Acterna Corp. Sec. Litig.*, 378 F. Supp. 2d 561, 588-89 (D. Md. 2005) (no support for loss causation where price dropped only modestly after disclosure and then rebounded). The SAC alleges no facts to address or explain this rebound, and thus does nothing to remedy the pleading deficiency that the Court identified. Moreover, as the Court previously held, Manulife did not misrepresent its intentions for raising capital, Opinion at 36, and "clearly disclosed the risks of an equity market downturn to its investors." *Id.* at 35. Thus, Plaintiffs cannot rely on Manulife's December 2, 2008 announcement that it would issue stock and had suffered equity-related losses as a corrective disclosure, because it did not disclose anything that Defendants previously had "concealed." *Lentell*, 396 F.3d at 173.

The Alleged February 12, 2009 Corrective Disclosure. The Court correctly held that Manulife's February 12, 2009 announcement was not a corrective disclosure because "[i]f there was any fraud about Manulife's equity market exposure . . . , the fact of this fraud would have been revealed on December 2, 2008." Opinion at 45. The SAC alleges no facts concerning the February 12, 2009 announcement beyond those in the FAC.

The Alleged February 27, 2009 Corrective Disclosure. The Court also correctly held that the Fitch Ratings downgrade announced on February 27, 2009 was not a corrective disclosure

7

"because the [FAC] does not allege that any new material information was revealed by the downgrade." *Id.* The SAC's only new allegation concerning the ratings downgrade – *i.e.*, that it somehow "enhanc[ed] the market's understanding of Manulife's equity market exposure," SAC ¶ 113, by offering Fitch's (ultimately incorrect) prognostication of "further declines in equity markets," *id.* ¶ 112 – does not suffice to render the announced downgrade corrective, for the reasons detailed in the Opening Memorandum (at 15-16).[5]

The Alleged March 2, 2009 Corrective Disclosure. The Court correctly held that Mr. Rubenovitch's March 2, 2009 presentation was not a corrective disclosure because it did "not reveal any new information that relates to the alleged fraud." Opinion at 45. As demonstrated in the Opening Memorandum (at 16-18), the SAC does not allege any new facts about this presentation, and the SAC's recharacterizations of the presentation do not show that it disclosed any new material information. The Opposition does not attempt to rebut these arguments but simply reasserts the discredited contention that the presentation "more fully explained the extent of Manulife's equity market exposure." Pl. Mem. at 23.

At bottom, the Opposition does not claim that any new loss-causation allegations in the SAC cure the deficiencies that the Court found in the FAC. Instead, Plaintiffs merely attempt to

---

[5] The cases that Plaintiffs cite fail to support their argument that the ratings downgrade "can show the materialization of a previously concealed risk." Pl. Mem. at 24. In those cases, the ratings downgrades resulted from the materialization of risks that were adequately alleged to have been concealed. *See In re Vivendi Universal, S.A., Sec. Litig.*, 605 F. Supp. 2d 586, 598, 601-02 (S.D.N.Y. 2009) (risk of deteriorating liquidity); *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897 (HB), 2006 WL 314524, at *1, *11-*12 (S.D.N.Y. Feb. 10, 2006) (risk of insufficient bond collateralization). Here, by contrast, Manulife "clearly disclosed the risk of an equity market downturn to its investors," Opinion at 35, so there was no materialization of a concealed risk. Rather, by its own terms, the downgrade resulted from Fitch's predictions of possible future events – *i.e.*, that "near-term conditions in the financial markets will likely continue" with possible "further declines in equity markets." SAC ¶ 112.

8

reargue, *id.* at 20-24, the Court's prior decision that the FAC's allegations did not suffice to plead loss causation. Opinion at 40-46. This argument is untimely and improper. A request for reconsideration was required to be noticed within 14 days of the Court's Opinion dismissing the FAC. L. Civ. R. 6.3. Even if Plaintiffs had timely sought reconsideration on the basis of the arguments now made in the Opposition, such a motion would have been improper. Plaintiffs do not point to any controlling authority or factual allegations in the FAC that the Court overlooked, but instead improperly seek "to reargue those issues already considered" because they do "not like the way the original motion was resolved." *Yurman Design Inc. v. Chaindom Enter., Inc.*, No. 99 Civ. 9307, 2000 WL 217480, at *1 (S.D.N.Y. Feb. 22, 2000) (internal citations and quotation marks omitted). The Court should reject Plaintiffs' untimely and improper attempt to seek reconsideration of that ruling.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the SAC in its entirety, and with prejudice.

Dated: November 16, 2011

                            DEBEVOISE & PLIMPTON LLP

                            By: /s/ Gary W. Kubek
                            Edwin G. Schallert
                            Gary W. Kubek
                            Stuart C. Naifeh
                            Peter J. Kim
                            919 Third Avenue
                            New York, NY 10022
                            (212) 909-6000 (phone)
                            (212) 909-6836 (fax)
                            egschall@debevoise.com
                            gwkubek@debevoise.com
                            snaifeh@debevoise.com
                            pjkim@debevoise.com

                            Scott N. Auby
                            555 13th Street NW, Suite 1100E
                            Washington, DC 20004
                            (202) 383-8000 (phone)
                            (202) 383-8118 (fax)
                            snauby@debevoise.com

                            *Attorneys for Defendants*