Case 1:09-cv-06185-JFK   Document 46   Filed

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Sept. 19, 2012

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
IN RE:  MANULIFE FINANCIAL CORPORATION   : No. 09 Civ. 6185 (JFK)
SECURITIES LITIGATION                    :
-----------------------------------------:   OPINION AND ORDER
This document relates to all actions.    :
-----------------------------------------:
```

APPEARANCES

    For Lead Plaintiffs:
        ROBBINS GELLER RUDMAN & DOWD LLP
        By:  Samuel H. Rudman
             David A. Rosenfeld
             Erin W. Boardman

    For Defendants:
        DEBEVOISE & PLIMPTON LLP
        By:  Edwin G. Schallert
             Gary W. Kubek
             Stuart C. Naifeh
             Peter J. Kim
             Scott N. Auby

**John F. Keenan, United States District Judge:**

    On May 23, 2011, this Court dismissed the First Amended Complaint filed by lead plaintiffs Locals 302 and 612 of the International Union of Operating Engineers-Employers Construction Industry Retirement Trust, Western Washington Laborers-Employers Pension Trust, and California Ironworkers Field Pension Trust ("Plaintiffs"), but granted Plaintiffs leave to replead.  Three months later, Plaintiffs filed their Second Amended Complaint and thereafter, defendants Manulife Financial Corporation ("Manulife"), Dominic D'Alessandro ("D'Alessandro"), and Peter Rubenovitch ("Rubenovitch") (together, "Defendants")

moved to dismiss it pursuant to Rule 12 of the Federal Rules of Civil Procedure.

Currently before the Court is Defendants' motion to dismiss the Second Amended Complaint ("SAC"). For the reasons explained below, the SAC fails to correct the deficiencies identified in the Court's Opinion and Order dated May 23, 2011 ("first Opinion"). Accordingly, Defendants' motion to dismiss is granted with prejudice.

## I. Background

The Court presumes familiarity with the allegations made in Plaintiffs' First Amended Class Action Complaint (the "FAC") and the procedural history of this litigation prior to the entry of its first Opinion. See In re Manulife Financial Corp. Secs. Litig., 276 F.R.D. 87 (S.D.N.Y. 2011) (hereinafter "Op."). Briefly stated, this putative securities fraud class action suit concerns whether Manulife, D'Alessandro, former Manulife Chief Executive Officer, and Rubenovitch, former Manulife Senior Executive Vice President and Chief Financial Officer, defrauded a class of investors who acquired Manulife common stock between March 28, 2008 and March 2, 2009, inclusive (the "class period"). The fraud allegations relate to Manulife's public statements about the financial impact of Manulife's segregated fund and variable annuity products on the value of Manulife common stock. These two investment products (the "Guaranteed

Products") are profitable for Manulife so long as the long-term value of the funds exceeds the guaranteed payment obligations, but may incur losses when the value of the funds are insufficient to cover the guarantees.

### A.   The Court's Dismissal of the FAC

The Court dismissed the FAC on the grounds that Plaintiff failed to adequately plead materiality, scienter, and loss causation.  Specifically, the Court found that the misstatements alleged in the FAC were not actionable because they allege only "fraud-by-hindsight." Op. at 31 (citing <u>Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc.</u>, 32 F.3d 697, 703 (2d Cir. 1994), <u>In re Citigroup Inc. Secs. Litig.</u>, 753 F. Supp. 2d 206, 246 (S.D.N.Y. 2010) (claim failed where plaintiffs relied on subsequent writedowns to argue that prior disclosures were misleading)).  Moreover, the Court found that other statements were not false or misleading, and others were taken out of context. Op. at 33-35.  The Court also held that "Plaintiffs' allegations do not give rise to a strong inference of scienter unless all competing inferences are ignored." Op. at 38.  Finally, the Court dismissed the FAC because the Plaintiffs "failed to allege facts sufficient to attribute the Class members' economic loss to the disclosure of an alleged fraudulent scheme." <u>Id.</u> at 46.

In the Plaintiffs' papers opposing Defendants' motion to dismiss the FAC, Plaintiffs attempted to support their allegations by requesting that the Court take judicial notice of an article entitled "Inside the Fortress:  Drama Behind Manulife's Doors," which appeared in the Canadian newspaper <u>Financial Post</u> on January 30, 2010.  While the Court adhered to precedent and declined to consider facts not alleged in the Complaint, the court noted in a footnote that "the result of this motion would be no different if the Court did consider the allegations in this motion." <u>Id.</u> at 24.

**B.   The Allegations of the SAC**

Now, in their second attempt to plead its case before the Court, Plaintiffs have revamped their Complaint.  The SAC is ten paragraphs and three pages longer than the FAC and covers the same time period.  Many of the allegations in Plaintiffs' SAC are identical to or substantially the same as the allegations in the FAC. <u>See, e.g.</u>, SAC ¶¶ 1-3, 5-8, 11-12, 13-32.  The Court notes that Paragraphs 163–169, which comprise Counts I and II of the SAC, are unaltered from the original, and the "Prayer for Relief" is identical to that found in the FAC, except that Plaintiffs withdraw their petition for "rescission or a rescissory measure of damages." <u>Id.</u> ¶ D.  The Court will focus only on Plaintiffs' pertinent new allegations.  These allegations fall generally into three categories: (1)

information set forth in an article published by the Financial Post on January 30, 2010; (2) statements made by Manulife and its representatives; and (3) the downgrade by Fitch Ratings.

### 1. *Financial Post* Article

Paragraphs 42-43 of the SAC allege that the Financial Post article reported that Manulife was warned about "growing equity risk" arising from Manulife's Guaranteed Products, by its Chief Risk Officer and "internal company documents." Id. ¶ 42. As a result, Paragraph 43 alleges, D'Alessandro was encouraged to increase hedging of its equity market exposure. The article also published statements from Manulife investors about "a real credibility issue" with past management and the board. Id. ¶¶ 50-51, 134.

Next, the SAC provides additional detail to the FAC's allegations about an investigation by Canada's Office of the Superintendent of Financial Institutions (the "OSFI"), which began in September 2008 and was reported in the Financial Post article. Id. ¶¶ 44-50. The OSFI is alleged to have raised questions about the adequacy of Manulife's risk controls and exposure to equity markets, and to have "insisted" that Manulife "shore up its capital provisions" at unspecified times in October 2008. Id. ¶¶ 45, 46, 78, 82, 85, 137.

The SAC also cites the Financial Post for the proposition that the OSFI issued a "supervisory letter" expressing concerns

about Manulife's capital adequacy and recommended that Manulife retain the accounting firm Deloitte & Touche to review its risk-management processes. Id. ¶¶ 47-49.

### 2. Statements by Manulife and its Representatives

Paragraph 9 of the SAC adds an allegation that during the class period, Manulife publicly represented that its capital reserves were adequate, that it could "withstand a stock market downturn," and that it would not need to issue equity while at the same time, the OSFI expressed concerns about Manulife's capital reserves and was privately insisting that Manulife engage "in a series of transactions to raise capital."

In paragraph 10, Plaintiffs add the allegation that Manulife announced a $2 billion equity offering to bolster its capital reserves on December 2, 2008, and that it would increase its capital reserves to $5 billion by the end of 2008, thus incurring a $1.5 billion loss in the fourth quarter of 2008.

Similarly, paragraphs 57 and 58 allege that Manulife's 2007 Annual Report contained false and misleading statements as to its stress tests of regulatory capital. Plaintiffs allege that Manulife did not disclose the results of its stress tests under the scenario of a 10% or greater market decline, "despite the known and substantial risks posed by potential stock market declines." Id. ¶ 58.

Next, Plaintiffs have added an allegation relating to D'Alessandro's May 2008 public statement that Manulife could "expect to do well no matter what and how turbulent the financial markets may get." Plaintiffs state that this was false and misleading because Defendants "knew or recklessly disregarded [that] Manulife's balance sheet could not absorb the growing equity risk posed by its variable annuity and segregated fund products." Id. ¶ 67.

In Paragraph 91, Plaintiffs point to a press release issued on November 6, where D'Alessandro describes Manulife's capital position as "comfortable." According to Plaintiffs, he was deliberately attempting to mislead the public by concealing and downplaying the "significant risk that a continuing equity market downturn would require Manulife to shore up the capital reserves backing its guaranteed payments to variable annuity and segregated fund policyholders," given that the OSFI was conducting a series of "activity reviews" of Manulife's capital adequacy and insisting that it raise capital.

The alterations in paragraphs 114-118 and 157 of the SAC relate to a presentation made by Rubenovitch March 2, 2009. Plaintiffs claim that this presentation "disclosed additional details about the damage that Manulife's equity market exposure had inflicted" on Manulife's balance sheet. Id. ¶ 114. Specifically, Rubenovitch informed those who attended the

presentation that "Manulife's variable annuity and segregated fund products had reduced 2008 earnings by over 3.7 billion," and that the total value of Manulife's Guaranteed Product obligations exceeded the value of the associated funds by $27 billion even though the expected profit from these Guaranteed Products was only $135 billion. Id. ¶ 115.

### 3. Fitch Ratings Downgrade

In paragraphs 112, 113 and 156 of the SAC, Plaintiffs provide additional detail to the FAC's allegations relating to Fitch Ratings downgrade of Manulife's credit ratings on February 27, 2009. Plaintiffs claim that the Fitch Ratings downgrade "enhanced the market's understanding of Manulife's equity market exposure," thus causing a decline in the price of Manulife's stock. Id. ¶ 112.

## II. Discussion

### A. Legal Standard

#### 1. Motion to Dismiss

As it did in reviewing Defendants' motion to dismiss the FAC, the Court treats all factual allegations in the SAC as true and draws all reasonable inferences in Plaintiffs' favor. See Ganino v. Citizens Util. Co., 228 F.3d 154, 161 (2d Cir. 2000); Lee v. Bankers Trust Co., 166 F.3d 540 (2d Cir. 1999). "Dismissal is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved

consistent with the allegations.'" In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 69 (2d Cir. 2001) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).  Because the SAC charges securities fraud, Plaintiffs must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the PSLRA, 15 U.S.C. § 78u-4. See Kalnit v. Eichler, 264 F.3d 131, 138 (2d Cir. 2001).  Thus, "[t]he complaint must identify the statements plaintiff[s] assert[ ] were fraudulent and why, in plaintiff[s]' view they were fraudulent, specifying who made them, and where and when they were made." In re Scholastic Corp., 252 F.3d at 69-70.

In addition to the allegations in the SAC, the Court considers written instruments attached to the SAC as exhibits and all statements or documents incorporated in the SAC by reference, "as well as public disclosure documents required by law to be, and that have been, filed with the SEC." Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) (citations omitted); see also DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).  The Court also considers matters of which the Court may take judicial notice, Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), including well-publicized stock prices and equity index levels, Ganino, 228 F.3d at 167 n.8.

**2.   Section 10 of the Securities Exchange Act**

Plaintiffs' claims are brought pursuant to section 10(b) of the Securities Exchange Act and Rule 10b-5.  To bring a cause of action pursuant to these provisions, plaintiffs must allege with particularity that Manulife "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 172 (2d Cir. 2005).

A misstatement or omission is material "'if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to [act].'" Basic, Inc. v. Levinson, 485 U.S. 224, 231 (1988) (quoting TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976)).  "Material facts include those that affect the probable future of the company and that may affect the desire of investors to buy, sell, or hold the company's securities." Castellano v. Young & Rubicam, Inc., 257 F.3d 171, 180 (2d Cir. 2001).  "At the pleading stage, a plaintiff satisfies the materiality requirement of Rule 10b-5 by alleging a statement or omission that a reasonable investor would have considered significant in making investment decisions." Ganino, 228 F.3d at 162 (citing Basic, 485 U.S. at 231).

With regard to scienter, plaintiffs must allege "an intent to deceive, manipulate or defraud." Kalnit, 264 F.3d at 138. In evaluating whether plaintiffs have satisfied this requirement, "the Court must read the complaint in toto and most favorably to plaintiff." In re Regeneron Pharm., Inc. Sec. Litig., No. 03 Civ. 3111, 2005 WL 225288, at *24 (S.D.N.Y. Feb. 1, 2005). However, Plaintiffs must allege facts that give rise "to a strong inference that [defendants] acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2); "a weak yet reasonable inference of scienter" will not suffice. In re JP Morgan Chase Secs. Litig., 363 F. Supp. 2d 595, 618 (S.D.N.Y. 2005).

Plaintiffs can establish scienter in either of two ways: "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious behavior or recklessness." Acito v. IMCERA Group, Inc., 47 F.3d 47, 51 (2d Cir. 1995).

### B. Application

As explained above, the Court dismissed the FAC because it failed to establish materiality, scienter, and loss causation. Defendants assert that none of the new factual allegations in the SAC – the information from the Financial Post article, Manulife's statements, and the Fitch rating - remedy the

- 11 -

deficiencies that led the Court to dismiss the FAC.  For the reasons stated below, the Court agrees.

    1.    **Material Misrepresentations Alleged in the SAC**

        a.    **_Financial Post_ Article**

The Court notes that it briefly addressed the _Financial Post_ article in its first Opinion, stating that the allegations derived from the article were insufficient to plead a material misstatement.  Nonetheless, the Court will revisit the allegations from the article that have been added to the SAC.

First, Plaintiffs point to information in the article about the April 2006 presentation that detailed Manulife's growing equity risk.  According to Plaintiffs, "Defendants specifically described Manulife's risk management framework as designed to protect against the very type of earnings losses and capital strain that, in truth, the Company was then highly vulnerable to as a result of the equity market exposure from its Guaranteed Products." Pls.' Mem. at 9 (quoting SAC ¶¶ 52, 54-55).  These allegations are insufficient to demonstrate materiality, as they - still - only demonstrate "fraud by hindsight." See Op. at 30.  The fact that a news article raised concerns about Manulife's disclosure of its equity market exposure in 2010 does not render statements made by D'Alessandro in 2008 misleading or fraudulent.

Second, the SAC includes allegations from the Financial Post article about expressions of concern by the OSFI and its insistence in October that Manulife undertake "a series of transactions" to shore up its capital. As an initial matter, Defendants point out that there is no allegation about when in October 2008 the OSFI "insisted" that Manulife raise capital, so the Court cannot conclude that the OSFI made this request before Defendants' statements of October 13 and 14 regarding Manulife's capital adequacy. In any event, these allegations of information from the OSFI do not make any public statement identified in the SAC actionable under the securities laws. As the Court found in its first Opinion, allegations that the "OSFI was performing its duty as an insurance regulator . . . do not contradict any public statements nor render any public statements of opinion attributable to Manulife or the individual defendants actionably false." Op. at 24 n.2.

    b.    **Statements by Manulife and its Representatives**

In its SAC, Plaintiffs have also identified a series of statements in Manulife's 2007 Annual Report, issued March 28, 2008, which they allege are false or misleading. Specifically, Plaintiffs discuss Defendants' statements that hedging programs would only reduce exposure for newly-issued guarantees, that it would only assume prudent risks going forward, and that it would remain diversified across risk categories. SAC ¶¶ 52-61.

According to Plaintiffs, Manulife's decision to engage in what they characterize as "minimal" hedging against the risk of stock market declines "exposed [Manulife] to the risk that stock market declines would leave it with inadequate reserves to cover its guaranteed payments under the applicable regulatory capital requirements." SAC ¶¶ 5-6.

Plaintiffs also focus on several statements made by D'Alessandro in 2008, alleging that they were "reckless" forward-looking statements. SAC ¶¶ 64, 71.  According to Plaintiffs, "Defendants' highly positive statements were misleading because they conveyed the impression that Manulife's exposure to the stock market due to its Guaranteed Products did not pose a material risk to the Company's financial condition, when in truth, it did." Pls.' Mem. at 12.

Finally, Plaintiffs contend that the SAC "clarifies that Defendants' selective statements about Manulife's hedging initiatives first misled investors by overstating the extent to which hedging was part of Manulife's risk management strategy for its Guaranteed Products." Id. at 10.  In Plaintiffs' view, the Defendants "failed to disclose that [Manulife] was continuing to amass a huge amount of exposure to the stock markets, and hedging newly-issued guarantees would not have a material impact on offsetting that exposure." Id. at 11.

The statements that Plaintiffs have added to its SAC are all statements of opinion or general corporate optimism, since the statements merely conveyed generalized confidence only about Manulife's long-term prospects.  Therefore, they are not actionable in light of the unpredictability and volatility of the stock market.  This is particularly true where, as here, Manulife made no attempt to conceal its exposure to market changes. See Rosner v. Star Gas Partners, L.P., 344 F. App'x 642, 644 (2d Cir. 2009), Rombach v. Chang, 355 F.3d 164, 174 (2d Cir. 2004) (a company is "not required to take a gloomy, fearful or defeatist view of the future; subject to what current data indicates, they can be expected to be confident about their stewardship and the prospects of the business that they manage") (internal quotation omitted).  Moreover, as the Court previously observed, Manulife did "weather the storm" wrought by the financial crisis:  "despite declines in equity markets, Manulife maintained positive net shareholder income annually in 2008 and 2009." Op. at 34.

        c.    **Fitch Ratings Downgrade**

Third, Plaintiffs have alleged that the Fitch downgrade notified the market about Manulife's equity market exposure.  This Court does not find this suggestion plausible, having already found that no "new material information was revealed by the downgrade," Op. at 45.  Because Manulife "clearly disclosed

the risks of an equity market downturn to its investors," Op. at 35, the Court can discern no additional information in the SAC to warrant amending its finding as to the materiality of the Fitch downgrade.

### 2. Allegations of Scienter in the SAC

As in the FAC, Plaintiffs do not claim that Manulife or the Individual Defendants possessed a motive to commit fraud, but rather have attempted to allege circumstances to suggest conscious misbehavior or recklessness.  However, the additions to the SAC have done nothing to fix the fatal flaws in the FAC with respect to scienter.

#### a. Financial Post Article

Plaintiffs' new allegations from the Financial Post article do nothing to bolster Plaintiffs' attempt to establish conscious misbehavior or recklessness.  The OSFI's request that the Defendants "shore up its capital" does not necessarily indicate that Manulife would need to issue equity to do so.  Rather, according to the Financial Post article, issuance of common stock was only one of several possible options mentioned by the OFSI "to flush up Manulife's capital."  In fact, D'Alessandro initially "refused to consider diluting Manulife's shareholders with a share offering, insisting it was a last-resort option." Pls.' Mem. At 14.  As Defendants point out, D'Alessandro's

statement is consistent with Manulife's earlier representations that it did not plan to issue equity.

### b. Statements by Manulife and its Representatives

The new allegations as to statements by Manulife and its representatives similarly do not provide any additional basis for scienter. As described above, statements of corporate optimism are not actionable. Indeed, as the Court found in its first Opinion, the allegations more plausibly give rise to the conclusion "that the Defendants believed the Guaranteed Products would be profitable over the long term and that in the short term, Manulife's other revenue streams and accumulated capital would keep the Company afloat." Op. at 40.

### 3. Loss Causation Allegations in the SAC

Plaintiffs have not satisfied their burden as to loss causation because they have failed to establish a causal link between the drop in stock price and the purported corrective disclosures. Despite Plaintiffs' grand allegations regarding Manulife's tumbling stock price, the fact remains that over 75% of the total decline in price occurred before any of the so-called corrective disclosures were issued. Indeed, as the Court noted in its initial opinion, Plaintiffs' loss causation allegations do not "support the inference that a defendant's fraud proximately caused the loss." Op. at 44. Because the SAC alleges no additional facts to support its theory of loss

- 17 -

causation, the decline in Manulife's stock price is not logically attributable to the disclosures.

As to the Fitch ratings downgrade of February 27, 2009, Plaintiffs acknowledge that it merely "reflect[ed] the adverse information that the market was [already] absorbing," SAC ¶ 112, and thus did not reveal anything new about the purported falsity of Defendants' prior statements. Therefore, the Fitch downgrade does not qualify as a corrective disclosure. See In re Omnicom Group, Inc. Secs. Litig., 541 F. Supp. 2d 546, 552 (S.D.N.Y. 2008) (to be a corrective disclosure for the purpose of loss causation, an alleged disclosure must "reveal the falsity of an alleged misstatement.").

The Court notes that Plaintiffs plead no new facts concerning the March 2, 2009 presentation given by Rubenovitch. The SAC merely extracts slides from that presentation and attempts to characterize those slides as revealing previously undisclosed material information. But this presentation was included in the FAC and rejected as corrective by the Court. Op. at 45-46.

### C. SAC's Section 20(a) Claims Against the Individual Defendants

Because the SAC fails to state a Section 10(b) claim against Manulife, Plaintiffs' claims under Section 20(a) against the Individual Defendants must also be dismissed.

## III. Conclusion

Having been given the opportunity to amend their pleadings, Plaintiffs have failed to plead materiality, scienter, or loss causation. Plaintiffs have thus failed to state a claim for securities fraud. Defendants' motion to dismiss the SAC is therefore granted with prejudice.

SO ORDERED.

Dated:   New York, New York
         September 19, 2012

                                   _____
                                        John F. Keenan
                                   United States District Judge